1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AIR LINE PILOTS ASSOCIATION,

        Plaintiff,

    v.

ALASKA AIRLINES, INC.,

        Defendant.

Case No.  C05-0897L

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

## I.  INTRODUCTION

This matter comes before the Court on motions filed by defendant Alaska Airlines, Inc. ("Alaska") to dismiss (Dkt. #9) and for summary judgment (Dkt. #22), and on a motion for summary judgment filed by plaintiff Air Line Pilots Association ("ALPA") (Dkt. #15).[1]  Alaska argues that this case should be dismissed for lack of subject matter jurisdiction because the parties agreed to final and binding arbitration of their dispute, an arbitration panel rendered a decision, and this case is not within any of the very narrow categories of cases for which Congress has provided for judicial review.  ALPA counters that the Court has subject matter jurisdiction pursuant to the Railway Labor Act because the arbitration panel's decision did not

---

[1] At the request of the parties, the Court heard oral argument on all three motions on October 25, 2005.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS - 1

comply with the parties' agreement to arbitrate, and therefore the Court should enjoin Alaska from implementing the panel's decision.

For the reasons set forth in this Order, the Court grants Alaska's motion to dismiss.

## II.  DISCUSSION

**A.    Background.**

The background facts in this matter are straight forward and not disputed.  ALPA is the exclusive collective bargaining representative for all of Alaska's pilots.  The Railway Labor Act, 45 U.S.C. § 151 *et seq.* (the "RLA") allows parties to follow their own contractually negotiated procedures for amending their collective bargaining agreements in lieu of the lengthy procedures set forth in the statute.  For nearly thirty years, ALPA and Alaska have engaged in interest arbitration concerning various issues they were unable to resolve in direct negotiations.  This dispute arises out of the parties' most recent interest arbitration.

The parties' collective bargaining agreement was to expire on April 30, 2005.  In anticipation of that deadline, they entered into Letter of Agreement 01-02 ("Letter 01-02") and agreed to conduct direct and expedited negotiations regarding wages and other issues. Declaration of Cathryn Dammel (Dkt. #10), Ex. A-1 (Letter 01-02).  The parties were required to begin their negotiations by June 1, 2004 and complete them by December 15, 2004.  Letter 01-02 provided that if ALPA and Alaska were unable to reach an agreement on all of the terms of a new labor contract, they would submit wage rates and not more than ten non-wage issues (five per side) for resolution by a three member arbitration board comprised of one ALPA designee, one Alaska designee, and a neutral member[2] selected by the parties (the "board"). Letter 01-02 set forth various parameters and criteria for the board to apply in fashioning its award.  See Letter 01-02 at ¶¶ 7, 8.b.

_____

[2] The parties selected Richard Kasher as the neutral member of the board; he served as the board's chairperson.  Mr. Kasher is the former General Counsel of the National Mediation Board.  ALPA does not dispute Alaska's assertion that Mr. Kasher has extensive experience and expertise as a labor arbitrator and is highly regarded in the airline industry.

Letter 01-02 stated that the board's decision would be "final and binding."  Letter 01-02 at ¶ 5.  The arbitration hearing was conducted for seven days in March 2005 and involved numerous witnesses and the submission of lengthy pre-hearing statements and post-hearing briefs.  The board issued its 64-page decision on April 30, 2005.

ALPA argues that the board exceeded the scope of its authority and its award failed to conform to the parameters set forth in Letter 01-02 on three issues:[3] wages, code sharing/"work preservation,"[4] and profit sharing.  The board rejected ALPA's proposal to require inclusion of code sharing provisions in the contract, and instead found that the issue was best addressed through direct negotiations.  On the profit sharing issue, the board directed the parties to incorporate Alaska's existing profit sharing program into their collective bargaining agreement; ALPA argues that the board mischaracterized the existing program and ignored Alaska's most recent offer.  As for wages, ALPA argues that the board improperly adopted Alaska's proposal and imposed a pay reduction averaging 26% for Alaska's pilots.

ALPA filed this lawsuit alleging that Alaska, by implementing the board's decision, violated section 2, Seventh of the RLA, which provides that a carrier may not "change the rates of pay, rules, or working conditions of its employees, as a class as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title."  45 U.S.C. § 152, Seventh.  ALPA requests that the Court vacate the board's award in its entirety, restrain Alaska from implementing the award, order Alaska to submit to a new arbitration, and order Alaska to maintain the status quo pending completion of the second arbitration.

---

[3] The other issues that the parties submitted and the board considered were retirement benefits, active employee and retiree healthcare benefits, vacation benefits, training pay, and bid line modification.

[4] Pursuant to code sharing agreements, an airline may place its designator code on flights of another airline for scheduling and marketing purposes.  From the airline's perspective, the practice increases the breadth of its network and allows it to compete with larger airlines; from the union's perspective, the practice is a form of transferring away work.

**B.    Analysis.**

ALPA, in seeking to vacate the board's decision, is in essence asserting two distinct, though closely related, theories to achieve that remedy.  ALPA urges the Court to find that Alaska violated section 2, Seventh by changing the status quo, and to review and vacate the board's decision as inconsistent with the parties' agreement.  As set forth below, the Court finds that it has jurisdiction over the first issue but not the second, and it therefore lacks jurisdiction to review and vacate the board's decision.

**1.    Alteration of the Status Quo.**

Alaska argues that the Court lacks jurisdiction to hear ALPA's complaint.  The Court, however, has jurisdiction to consider ALPA's claim that Alaska has violated section 2, Seventh of the RLA.  28 U.S.C. §§ 1331, 1337.[5]  There is a dearth of authority regarding the duties set forth in section 2, Seventh, presumably because parties typically allege status quo violations under sections 5, 6, and 10 of the RLA.  See Shore Line, 396 U.S. at 155-56.[6]  However, the Court assumes, as the parties do, that section 2, Seventh applies and imposes a status quo obligation in this circumstance.  See, e.g., Chicago & N.W. Transp. Co. v. Ry. Labor Executives Ass'n, 908 F.2d 144, 151 (7th Cir. 1990).

ALPA argues that because the board's decision is inconsistent with the terms of Letter

---

[5] Because neither party contests the issue, the Court assumes as the parties do that their agreement to arbitrate rather than follow the RLA's dispute resolution procedures was permissible.  See, e.g., Railroad Labor Executives' Ass'n v. Boston & Maine Corp., 664 F. Supp. 605, 611 (1987) ("This power of the parties to modify the statutory requirements is implicit in the structure of the RLA and entirely consistent with its purpose"); but see Detroit & Toledo Shore Line R.R. Co. v. United Transp. Union, 396 U.S. 142, 156 (1969) ("Shore Line").

[6] In Shore Line, the Court explained that section 2, Seventh "does not impose any status quo duties attendant upon major dispute procedures.  It simply states one category of cases in which those procedures must be invoked."  396 U.S. at 156 (noting the RLA's status quo provisions in sections 5, 6, and 10).  The Court went on to explain the twofold purpose of the section: "it operates to give legal and binding effect to collective agreements, and it lays down the requirement that collective agreements can be changed only by the statutory procedures."  Id.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS - 4

1   01-02, it has been deprived of the benefit of its bargain.  The parties, however, agreed to *final*

2   *and binding* arbitration, and Letter 01-02 does not provide for any additional procedures or

3   review after the board issues its decision.  If ALPA's position were accepted, the parties would

4   be required to undergo a second round of expensive and time consuming arbitration, all without

5   the certainty of a final and binding arbitration.  This would deprive both sides of the benefit of

6   their bargain as expressed in clear and unambiguous terms.

7          ALPA also contends that Alaska violated section 2, Seventh because pursuant to that

8   section, Alaska could only implement an award that was "consistent with" Letter 01-02.[7]

9   Section 2, Seventh, however, does not address the substance of an agreement or its results.

10  Instead, it governs the process and states that a carrier may not "change the rates of pay, rules, or

11  working conditions of its employees, as a class as embodied in agreements except in the *manner*

12  prescribed in such agreements or in section 156 of this title."  45 U.S.C. § 152, Seventh

13  (emphasis added).  The parties both concede that Letter 01-02 is an agreement as contemplated

14  by the statute, and that the manner prescribed in that agreement was final and binding

15  arbitration. It is also undisputed that Alaska does not intend to change the status quo except as

16  provided by the board's decision.  In light of these facts, Alaska is changing the status quo only

17  in the *manner* prescribed in Letter 01-02, and it has not violated the statute.

18         Finally, finding a violation of section 2, Seventh in this circumstance would not further

19  the purposes of the statute.  The RLA is designed to prevent "'wasteful strikes and interruptions

20  of interstate commerce.'"  Airline Pilots Ass'n, Int'l v. Pan Am. World Airways, Inc., 765 F.2d

21  377, 380 (2nd Cir. 1985) (quoting Shore Line, 396 U.S. at 153).  The RLA prohibits a party

22  from *unilaterally* altering the status quo during the negotiation period to promote labor stability

23  and encourage compromise.  Shore Line, 396 U.S. at 149 & n.14.  In this case, Alaska has not

24  unilaterally altered the status quo.  The parties had concluded their negotiations, culminating in

25

---

26        [7] Whether the board's decision actually conflicts with Letter 01-02 involves a review of
27  the decision and its merits, which is addressed in subsections 2 and 3 below.

28  ORDER GRANTING DEFENDANT'S
    MOTION TO DISMISS - 5

1    Letter 01-02.  For all of these reasons, the Court finds that Alaska has not violated section 2,

2    Seventh of the RLA.

3            **2.      Review of the Board's Decision.**

4            The fact that the Court has jurisdiction to determine if section 2, Seventh has been

5    violated does not equate to authority to vacate the arbitration award.  Congress provided for

6    judicial review of an arbitrator's decision in two circumstances enumerated in the RLA; both

7    sides agree, however, that neither of those provisions applies in this case.[8]  Nevertheless, ALPA

8    argues that this Court has jurisdiction to review and vacate the award under section 2, Seventh,

9    even though that section does not provide for judicial review.  In support of its position, ALPA

10   cites a variety of cases in which courts have vacated arbitration awards when the arbitrator has

11   exceeded the scope of his or her authority, or when the decision fails to derive its essence from

12   the parties' agreement.  None of those cases, however, involved a privately negotiated RLA

13   interest arbitration like this one.  Instead, the cited cases arose under another statute or one of the

14   two sections of the RLA that provides for judicial review.  See, e.g., United Steelworkers of Am.

15   v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960) (arising under § 301(a) of the Labor

16   Management Relations Act);[9] Iowa Transfer Ry. Co. v. Switchmen's Union of N. Am., 66 F.2d

17   ─────────────────

18           [8] See 45 U.S.C. § 153, First(q) (establishing jurisdiction for district courts to review
19   arbitration decisions of the National Railroad Adjustment Board for minor disputes).  Decisions
     issued pursuant to section 3 may be invalidated by a district court only for one of three reasons
20   enumerated in the statute: (1) failure to comply with the requirements of the RLA, (2) fraud or
     corruption, or (3) failure of the arbitrator to "conform, or confine, itself to matters within the
21   scope of [its] jurisdiction."  45 U.S.C. § 153, First(q).  Section 9 of the RLA creates district
22   court jurisdiction to review, or "impeach," an award issued by a statutory board of arbitration,
     supervised by the National Mediation Board, for reasons similar to those enumerated in section
23   3, First(q).

24           [9] There is good reason not to import in whole cloth holdings under the Labor
25   Management Relations Act ("LMRA") into RLA cases.  The LMRA "empowers the federal
     courts to fashion rules of federal common law to govern '[s]uits for violation of contracts
26   between an employer and a labor organization' under the federal labor laws."  United
     Paperworkers Int'l Union v. Misco, 484 U.S. 29, 40 n.9 (1987) (quoting Textile Workers v.

27

28   ORDER GRANTING DEFENDANT'S
     MOTION TO DISMISS - 6

909 (8th Cir. 1933) (applying 45 U.S.C. § 159); <u>Norfolk & W. Ry. Co. v. United Transp. Union</u>, 446 F. Supp. 1085 (W.D. Penn. 1978) (applying 45 U.S.C. § 153).  ALPA has not cited any authority providing for judicial review in this circumstance.  Furthermore, the review provisions in the RLA have been construed narrowly to further the purposes of the statute.  <u>See</u> <u>Union Pac. R.R. Co. v. Sheehan</u>, 439 U.S. 89, 91, 93 (1978) (refusing to expand grounds for vacating an award under section 3 because the statutory language is clear and "means just what it says;" explaining that the scope of judicial review under the RLA is "among the narrowest known in the law"); <u>see also</u> <u>Trans Int'l Airlines, Inc. v. Int'l Bhd. of Teamsters</u>, 650 F.2d 949, 963 (9th Cir. 1980) ("Congress has mandated the courts not to alter through injunctions the economic balance between employers and unions without a weighty statutory reason for doing so").

Finally, ALPA argues that the Court has the authority to vacate the award as part of its authority to hold the parties to their agreement, citing <u>Pan Am.</u>, 765 F.2d at 380.  The <u>Pan Am.</u> case, however, did not involve judicial review of an arbitration decision or the application of section 2, Seventh.  Instead, the court held that parties were required to comply with their contractually negotiated terms and conditions of employment during a section 6 status quo period.  <u>Id.</u> at 382.  In this case, the parties agreed that the arbitration board would decide the open issues in final and binding arbitration, and the Court will not undermine that agreement.

### 3.    Merits of the Award.

Even if the Court were to find that it has jurisdiction to review the merits of the award, ALPA would not prevail.  The most closely analogous standard is the one set forth in section 3 of the RLA, which states that an arbitrator's award can be invalidated for failure to "conform, or confine, itself to matters within the scope of its jurisdiction."  45 U.S.C. § 153; <u>see also</u> <u>Gunther v. San Diego & A.E. Ry.</u>, 382 U.S. 257, 261 (1965) (explaining that an arbitrator fails to

---

<u>Lincoln Mills</u>, 353 U.S. 448 (1957) (construing the LMRA)).  It does not appear that a similar body of common law has developed under the RLA, in part because of the heavy regulation of the involved industries.

1   conform or confine himself to matters within the scope of his jurisdiction only when the decision

2   is "wholly baseless and completely without reason"); <u>Misco, Inc.</u>, 484 U.S. at 38 (noting that an

3   arbitrator's decision must be upheld "as long as the arbitrator is even arguably construing or

4   applying the contract").

5            **a.      Code Sharing.**

6            ALPA argues that the board exceeded its jurisdiction regarding code sharing because

7   Letter 01-02 did not permit the board to defer issues, and the board deferred the issue back to

8   collective bargaining rather than resolving it.  Letter 01-02 states that the board "shall be limited

9   in its award to the open issues, and within the offers or positions of the parties.  For each open

10  issue, the award shall embody the average of the collectively bargained agreements for the

11  following carriers . . . ."  Letter 01-02 at ¶ 7.  During the hearing, ALPA witness Captain

12  William Shivers testified that "it was very, very difficult to find an average or something that

13  embodied the industry average" because of all of the "different restrictions and limitations and

14  exceptions."  Declaration of James Linsey (Dkt. #30), Ex. B at Tr. 1045-46 (explaining, "You'd

15  be very hard pressed to find a single restriction or limitation that is common enough in all those

16  different carriers to be called industry average").  Based in large part on Captain Shivers'

17  testimony, the board found that it was "virtually impossible" to determine an industry average on

18  code sharing, and found that ALPA, the party seeking to change the status quo, had not

19  presented sufficient evidence of an industry average to allow it to fashion an award.  Award at

20  pp. 53-54.  Letter 01-02 is silent as to what should occur if the board lacks evidence sufficient to

21  determine an industry average.  The board was empowered to interpret the agreement pursuant

22  to paragraph 12, and it is a reasonable interpretation to require the party seeking to alter the

23  status quo to provide sufficient evidence of an industry average.  Finally, the board's rejection of

24  ALPA's proposal and the continuation of the status quo is a decision on that issue, not a

25  complete deferral as ALPA contends.  Accordingly, the board's decision was not a "wholly

26

27

28  ORDER GRANTING DEFENDANT'S
    MOTION TO DISMISS - 8

1   baseless" interpretation of the agreement.[10]

2           **b.    Profit Sharing.**

3           As for profit sharing, the board found that on average, profit sharing plans for other

4   carriers were subject to the collective bargaining process, and it ordered that the "plan be

5   incorporated into the collective bargaining agreement as a contractual obligation upon the

6   Carrier" rather than a matter within the company's sole discretion.  Award at pp. 27, 55-56.  As

7   for the content of the plan, ALPA argues that the board ignored Alaska's offer to allow pilots to

8   share in 100% of the payout rather than 50%, and the board erroneously noted that the program

9   contained a 5% trigger when it actually included no trigger and a 5% pool for distribution.  The

10  parties dispute the import of the errors.  ALPA argues that the errors deprived it of the benefit of

11  Alaska's enhanced proposal, which was a significant improvement over its prior position.

12  ALPA, however, has not been deprived of that benefit.  Alaska plans to implement the increase

13  in the pilots' share to 100% and will not include a 5% trigger.  Also, the award reflects the

14  board's belief that Alaska had already allowed its pilots to share in 100% of the payout.  Award

15  at p. 27.  Furthermore, the Award did not create a 5% trigger or discuss the merits of it.  Rather,

16  the board ordered a continuation of the status quo based on three factors: (1) the parties

17  "acknowledge[d] that the collective bargaining agreement that will be the product of this interest

18  arbitration will be properly characterized as 'concessionary,'" (2) ALPA bore the burden of

19  proof because it was seeking to alter the status quo, and (3) "there is no reliable method to

20  determine an 'average' of profit sharing benefits for the pilots of the Comparator Carriers."

21  Award at p. 55.  These findings reflect a reasonable interpretation of the agreement.  Based on

22  the foregoing analysis, the Court finds that the board made factual errors rather than exceeding

23

24

25

─────────────────────

26      [10] Conversely, the board would likely have violated the agreement if it had mandated the
    implementation of a provision without sufficient evidence of an industry average.

27

28  ORDER GRANTING DEFENDANT'S
    MOTION TO DISMISS - 9

1   its authority; the award will not be overturned on that basis.[11]  See, e.g., Major League Baseball

2   Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) ("Courts are not authorized to review the

3   arbitrator's decision on the merits despite allegations that the decision rests on factual errors")

4   (internal quotation and citation omitted).

5            c.    Wages.

6            Letter 01-02 provided that "the Arbitration Board shall consider the rates of pay that meet

7   all of the following criteria: equipment comparable to the Company's fleet; contained in

8   collective bargaining agreements; domestic major carriers . . . ."  Letter 01-02 at ¶ 8.b.  The

9   parties agreed that ten carriers satisfied those criteria.  Amended Complaint at ¶ 19.  Letter 01-

10  02 also permitted the board to consider additional factors as long as it did not consider factors

11  that did not meet the criteria.  Although ALPA argues that the board used the parties' prior wage

12  formula despite Letter 01-02's prohibition on doing so, the board's decision is devoid of any

13  reliance on the prior formula.  Despite ALPA's argument to the contrary, Letter 01-02 does not

14  forbid the use of other formulae or averaging.  The board rejected ALPA's proposal to use only

15  Southwest Airlines as the benchmark for wage rates because that carrier had recently generated

16  $2 billion in profits while Alaska suffered a loss of approximately $200 million.  Instead, the

17  board adopted Alaska's proposal as consistent with the criteria including wage rates of Alaska's

18  competitors.  The board expressly considered the listed criteria as well as additional factors as

19  allowed by the agreement.  Award at p. 63.  Under these circumstances, the Court cannot find

20  that the board was not arguably construing or applying the contract.

21           The Court understands that the board's decision, which includes draconian pay cuts, will

22

23           [11] The parties had a number of options to correct the factual errors, including returning to
24  the board for clarification.  Instead, Alaska has chosen to take the position that the decision
    reflects a mere scrivener's error which has no effect on the parties because it considers itself
25  bound by the board's decision that the status quo incorporates Alaska's last offer.  In taking that
    position, Alaska is of course estopped from taking a position now or in the future that is
26  inconsistent with its current representations.

27

28  ORDER GRANTING DEFENDANT'S
    MOTION TO DISMISS - 10

result in hardship for many of Alaska's pilots and their families.  The Court also acknowledges that the airline industry is beleaguered, and many carriers are struggling to maintain viability amid staggering financial losses.  Against this backdrop, there are no easy answers.  The board, in its expertise, fashioned what it believed to be the correct result in light of the parties' agreement and the voluminous evidence presented.  The Court will not disturb the award.

### III.  CONCLUSION

For all of the foregoing reasons, the Court GRANTS Alaska's motion to dismiss (Dkt. #9), DENIES AS MOOT Alaska's motion for summary judgment (Dkt. #22), and DENIES ALPA's motion for summary judgment (Dkt. #15).  The Clerk of the Court is directed to enter judgment in favor of Alaska and against ALPA.


DATED this 28th day of October, 2005.



Robert S. Lasnik
United States District Judge